**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

**In re:**                                                           **Chapter 7**

**AMBER ERBSCHLOE,**                         **Case No. 11-72562**

**Debtor.**

_____

**AMBER ERBSCHLOE**

      **Plaintiff,**

**v.**                                                                **Adversary Proceeding No. 12-07013**

**U.S. DEPARTMENT OF EDUCATION,**

      **Defendant.**

**MEMORANDUM OPINION DENYING THE DEPARTMENT OF EDUCATION'S**
**MOTION FOR SUMMARY JUDGMENT**

At Roanoke in said District this 16th day of January, 2013:

On November 13, 2012, the Court held a hearing on the United States Department of Education's (the "Defendant" or the "Government") motion for summary judgment on Amber Erbschloe's complaint under 11 U.S.C. § 523(a)(8) seeking to discharge her student loan debt. The Government has asked this Court to enter an order finding as a matter of law, without a trial, that the Debtor's complaint should be denied. After considering the evidence provided at the hearing and the arguments of the parties, the Court took the matter under advisement. Based on that evidence, the Court makes, for purposes of this Motion, the following findings of fact and conclusions of law.

## Background

The Debtor filed her bankruptcy case on December 23, 2011 and this adversary proceeding seeking to discharge her federal student loan debt on March 7, 2012. The Defendant filed its Motion on October 10, 2012 seeking a determination that the Debtor is not permitted to discharge her federal student loan debt as a matter of law. After the Debtor's response, the Court held a hearing on the

matter. Based on the evidence in the record, the Court finds the following facts relevant to the determination before it.[1]

It is undisputed that the Debtor was the victim of a brutal attack and rape on June 23, 2004. In addition to the mental and psychological problems associated with such a tragic event, the attack is most likely the cause of the Debtor's snapping scapula – a progressively debilitating condition that causes a grinding of bones and tendons in the shoulder when moved. *See* Government's Exhibit B at 8, *Erbschloe v. Department of Education*, No. 12-07013 (Bankr. W.D.Va. Mar. 7, 2012) ECF No. 19; *and* Government's Exhibit H at 1, *Erbschloe v. Department of Education*, No. 12-07013 (Bankr. W.D.Va. Mar. 7, 2012) ECF No. 19.

In 2006, six years after earning an associate's degree in science from Virginia Western Community College, the Debtor re-enrolled at Virginia Polytechnic Institute and State University ("Virginia Tech"). The Debtor financed her education, in whole or in part, through student loans provided by the Defendant totaling approximately $17,500.00. The Debtor graduated from Virginia Tech in 2009 with a degree in fine arts. While at Virginia Tech, the Debtor discovered her talent in art installation, a form of art in which the artist uses every-day trash or junk and constructs large scale pieces of art. Government's Exhibit I, *Erbschloe v. Department of Education*, No. 12-07013 (Bankr. W.D.Va. Mar. 7, 2012) ECF No. 19.

The Debtor's snapping scapula prevents her from lifting and using her shoulder in any strenuous way, and thus prevents her from constructing the large-scale pieces of art required by the art installation field. Government's Exhibit H at 1, *Erbschloe*, No. 12-07013 (Mar. 7, 2012) ECF No. 19. Instead of pursuing art installation following graduation, the Debtor has been working in the

---

[1] The following findings of fact are based primarily on the exhibits provided by the Government at the hearing. The exhibits, however, are not particular to the Government, as the documents were either provided by or available to the Debtor through the discovery process. There were no objections by the Debtor to the Court considering such exhibits for the purpose of this Motion. Transcript of Oral Argument at 26, lines 5-10, *Erbschloe v. Department of Education*, No. 12-07013 (Bankr. W.D.Va. Nov. 13, 2012) ECF No. 26.

restaurant business, the line of work she pursued during and prior to earning her education at Virginia Tech. The Debtor primarily[2] works part-time as a server for the Bank Restaurant earning $5.00 per hour plus tips and has a monthly income that ranges between $500 and $1,000. *Compare* Official Form 6I – "Schedule I – Current Income of Individual Debtor(s)," *In re Erbschloe*, No. 11-72562 (Bankr. W.D.Va. Dec. 23, 2011) ECF No. 1; *with* Government's Exhibit B at 3, *Erbschloe*, No. 12-07013 (Mar. 7, 2012) ECF No. 19.

In December, 2011, the Debtor filed for bankruptcy under Chapter 7. As of the petition date, the Debtor had incurred more than $2,000.00 in medical bills and expenses associated with her shoulder condition.[3] Government's Exhibit H at 1, *Erbschloe*, No. 12-07013 (Mar. 7, 2012) ECF No. 19. In addition to her medical expenses, the Debtor's largest obligation was her federal student loan debt, totaling approximately $18,500 as of the petition date. Official Form 6J – "Schedule J – Current Expenditures of Individual Debtor(s)," *In re Erbschloe*, No. 11-72562 (Bankr. W.D.Va. Dec. 23, 2011) ECF No. 1. The total amount owed the Defendant as of the date of the hearing was approximately $19,900. Government's Exhibit C, *Erbschloe v. Department of Education*, No. 12-07013 (Bankr. W.D.Va. Mar. 7, 2012) ECF No. 19. Under the terms of the loan, the Debtor's first payment was due July 21, 2010, approximately 17 months prior to the Debtor's Chapter 7 filing. *Id.* Despite the Debtor's difficult financial position, she was not in default of her obligations under the loan, had not been charged any late fees, and had made payments on the obligation in the past. *Id.*

---

[2] The Debtor also works part time at Tangent Outfitters driving shuttles and answering phones. Government's Exhibit B at 2, *Erbschloe v. Department of Education*, No. 12-07013 (Bankr. W.D.Va. Mar. 7, 2012) ECF No. 19. The amount of hours and the rate at which she is paid is unknown to the Court.

[3] The Government notes there were additional treatment options that had been foregone due to their expense. *See* Government's Exhibit H at 1, *Erbschloe,* No. 12-07013 (Mar. 7, 2012) ECF No. 19.

There is, however, no evidence that the Debtor attempted to change the repayment terms of her loan. The Debtor's monthly expenses range between approximately $1,090.00 and $1,323.[4]

## Discussion

This Court has subject matter jurisdiction over this controversy under 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). Specifically, this proceeding deals entirely with the dischargeability of the Debtor's student loan debt held by the Government.

## Summary Judgment

The Government's Motion asks this Court to determine that the Debtor's student loan debt is not dischargeable under 11 U.S.C. § 523(a)(8) as a matter of law. Specifically, the Government alleges that the Debtor cannot establish the elements necessary to entitle her to a discharge under section 523(a)(8) and seeks entry of its summary judgment motion under Bankruptcy Rule 7056, which incorporates Rule 56 of the Federal Rules of Civil Procedure. Defendant's Motion for Summary Judgment, *Erbschloe v. Department of Education*, No. 12-07013 (Bankr. W.D.Va. Mar. 7, 2012) ECF No. 18. The Fourth Circuit has provided guidance on how courts should approach summary judgment motions. In *News and Observer Publishing Co. v. Raleigh-Durham Airport*, the Fourth Circuit stated:

> Summary judgment should be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Facts are material when they might affect the outcome of the case, and a genuine issue exists when the evidence would

---

[4] The Debtor's income naturally fluctuates based on the number of hours she works in a month and the amount of tips she receives. The Debtor's expenses, on the other hand, fluctuate from those reported in Schedule J ($1,089.00) to those reported in her Answers to Interrogatories ($1,322.33 = 225 + 0 + 0 + 175 + 400 + 25 + 0 + 19 + (175/3) + 175 + 0 + 45 + 200) based on both a natural fluctuation in monthly expenses during the approximately nine-month gap between the filing of the two documents (Debtor signed her Schedule J on August 31, 2011 and her Answer on May 25, 2012) plus the fact that she included certain expenses in her Answers to Interrogatories that she failed to list on her Schedule J. *Compare* Official Form 6J – "Schedule J – Current Expenditures of Individual Debtor(s)," In re Erbschloe, No. 11-72562 (Bankr. W.D.Va. Dec. 23, 2011) ECF No. 1; *with* Government's Exhibit B at 6, Erbschloe v. Department of Education, No. 12-07013 (Bankr. W.D.Va. Mar. 7, 2012) ECF No. 19. (There is an arithmetic error in calculating Debtor's "Total Monthly Expenses" on page 6. Based on the expenses provided, the total should read $1,322.33, not $1,147).

4

> allow a reasonable jury to return a verdict for the nonmoving party. The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make an adequate showing on an essential element for which it has the burden of proof at trial. In ruling on a motion for summary judgment, the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. To overcome a motion for summary judgment, however, the nonmoving party may not rely merely on allegations or denials in its own pleading but must set out specific facts showing a genuine issue for trial.

597 F.3d 570, 576 (4th Cir. 2010) (internal citations and quotations omitted) (summarizing Supreme Court precedent). Based on this standard, the Government will be entitled to judgment as a matter of law if it shows that: 1) the Debtor failed to adequately show the necessary elements for discharge of government-issued student loans; or 2) a reasonable finder of fact could not return a verdict in the Debtor's favor on any individual element necessary for a discharge.

## Dischargeability under Section 523(a)(8)

In order for government-issued student loan debt to be discharged in bankruptcy, a debtor must show that the maintenance of such debt would impose an "undue hardship." 11 U.S.C. § 523(a)(8). The Code fails to define the term "undue hardship." In enacting the section, however, Congress chose to use the term "undue" to create a heightened dischargeability standard that would require more than the usual hardships faced by the average individual in bankruptcy. *Education Credit Management Corp. v. Frushour*, 433 F.3d 393, 399 (4th Cir. 2005). The reasoning behind such a heightened standard was to protect the integrity of the student loan program, maintain its fiscal strength, and prevent debtors from easily passing student loan debts on to the taxpayers. *Id.* at 400.

Although several courts have wrestled with what is required to show an undue hardship under section 523(a)(8), the Fourth Circuit has adopted the *Brunner* test; named after the test applied in *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395 (2nd Cir. 1987). *Frushour*, 433 F.3d at 400. In *Brunner*, the Second Circuit found that the debtor needed to satisfy three factors in order to satisfy the "undue hardship" requirement:

5

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Brunner*, 831 F.2d at 396. Of these factors, the second is the heart of the test because it "most clearly reflects the congressional imperative that the debtor's hardship must be more than the normal hardship that accompanies any bankruptcy." *Frushour*, 433 F.3d at 401.

In the instant case, the Debtor must adequately show the existence of all three *Brunner* factors to survive the Government's Motion. If the Debtor fails to establish the existence of any of the three factors, she would be foreclosed from showing an undue hardship and the Government will be entitled to judgment as a matter of law. To determine if the debtor has satisfied this requirement in the face of a summary judgment motion, we must review all the evidence presented in the light most favorable to the Debtor as the non-moving party. *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)(quoting *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 255 (1986)("in ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor'"). For the following reasons, the Court determines that the Debtor adequately has shown the existence of all three *Brunner* factors and that genuine issues of material fact exist for trial. Therefore, the Government's Motion should be denied at this time, and a trial held to determine if the Debtor may discharge this student loan debt.

<u>Minimal Standard of Living – *Brunner* Factor One</u>

Of the published Fourth Circuit opinions applying and interpreting *Brunner* in a Chapter 7 case, none have analyzed the first *Brunner* factor. *See Spence v. Education Credit Management Corp.*, 541 F.3d 538 (4th Cir. 2008) (determined by *Brunner* factors two and three); *Educational Credit Management Corp. v. Mosko*, 515 F.3d 319 (4th Cir. 2008) (determined by the third *Brunner* factor); and *Frushour*, 433 F.3d 393 (determined by *Brunner* factors two and three). The only

6

guidance provided by the Fourth Circuit is that the *Brunner* test requires a case-by-case approach to determine if expenses are or are not essential for maintaining a minimal standard of living. *Frushour*, 433 F.3d at 400. Other courts, however, have found that if "a family earns a modest income and the family budget, which shows no unnecessary or frivolous expenditures, is still unbalanced, a hardship exists from which a debtor may be discharged of his student loan obligations." *In re Correll*, 105 B.R. 302, 306 (Bankr. W.D.Pa. 1989).[5] The Court finds this interpretation consistent with the language of the first *Brunner* factor that requires a court review the debtor's current income and expenses and determine whether a minimal standard of living is possible if forced to repay the student loans. *See Brunner*, 831 F.2d at 396 ("(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans."). Furthermore, the *Correll* standard is consistent with the case-by-case approach adopted by the Fourth Circuit in *Frushour*.

Looking at the Debtor's current income and expenditures, the Court finds that there is sufficient evidence on the record for purposes of this Motion to determine that the Debtor cannot maintain a minimal standard of living for herself if forced to repay the loans. The Debtor currently earns between $500 and $1000 per month and has expenses of approximately $1,323.[6] In reviewing the Debtor's expenses, the Court finds, based on the evidence presented in connection with this Motion, that Debtor has made efforts to reduce her expenses after filing her bankruptcy petition. Specifically, after filing, the Debtor has reduced her monthly insurance expense by $15.00, heating

---

[5] *In re Correll* was cited approvingly by the Fourth Circuit in *Lokey v. Educ. Credit Mgmt Corp.*, 98 Fed.Appx. 938, 940-41, 2004 WL 1066315 (4th Cir. 2004), and *Floyd v. Educ. Credit Mgmt Corp.*, 54 Fed.Appx. 124, 125, 2002 WL 31839159 (4th Cir. 2002).

[6] The Court finds the expenses provided by the Debtor in her Answers to Interrogatories to be a more accurate representation of her expenses at the time this Adversary Proceeding commenced, even though the Debtor made an arithmetic error in calculating the total expenses (see footnote 5, the "Total Monthly Expenses" on the debtor's Answers to Interrogatories reads $1147 when the total of the expenses itemized yields $1322.33). The Debtor's Schedule J filed in connection with her associated bankruptcy case fails to account for her rent and car payment expenses, which results in $425 of expenses not accounted for in her schedules. It is also important to highlight that neither expense total includes an amount for student loan payments.

and electric by $65.00, medical expense by $6.00, and transportation expense by $125.00. *Compare* Government's Exhibit B at 6, *Erbschloe v. Department of Education*, No. 12-07013 (Bankr. W.D.Va. Mar. 7, 2012) ECF No. 19; *with* "Schedule J," *In re Erbschloe*, No. 11-72562 (Dec. 23, 2011) ECF No. 1. On the other hand, the Debtor has seen an increase of $136.00 in her food, clothing, and reading/recreational expenses. *Id.* On the whole, the Debtor has been able to reduce her total expenses by $75.00 per month since filing bankruptcy. Furthermore, after reviewing the Debtor's bank records, *see* Government's Exhibit F, her expenses, on their face, appear to be acceptable.[7]

In addition to the expenses she previously listed, the Debtor currently has approximately $19,900 of student loan debt that needs to be repaid in the event her obligation is not discharged. Based on information provided by the parties, the Debtor has not attempted to pursue alternative repayment plans or consolidation. As such, the Court finds that the Debtor is currently on the Standard Repayment Plan. When asked, neither party was able to provide the Debtor's specific monthly payment amount on the loan. The Government, however, has provided the Court with repayment figures in Exhibit K. According to the Government, the minimum monthly payment amount permitted under the Standard Repayment Plan is $50.00. It is more likely, however, that a monthly payment for this loan of approximately $19,900, would be between $115 and $288. Based on the Government's direct loan repayment schedule figures contained in Exhibit K, a loan entering repayment in the amount of $10,000 requires a monthly payment of $115 and a loan entering repayment in the amount of $25,000 requires a monthly payment of $288. *See* Government's Exhibit K at 3, *Erbschloe v. Department of Education*, No. 12-07013 (Bankr. W.D.Va. Mar. 7, 2012) ECF No. 19. Although exact amounts and terms might be beneficial for future determinations, an approximate value is sufficient for purposes of this Motion.

---

[7] Although the Government was able to identify some potentially non-necessary expenses, these potentially problematic expenses are minimal and were explained to the Court's satisfaction at the hearing. Furthermore, even if the Court adjusted for these challenged expenses, the net result remains that the same: the necessary living expenses, without including a loan repayment, exceed the debtor's income.

Based on these figures, the Debtor is showing a budget shortfall of at least $323 per month, potentially upwards of $823 per month, without a monthly loan payment. This evidence of the Debtor's current income and expenditures supplies facts that may permit reasonable minds to find that the Debtor is unable to maintain a minimal standard of living if forced to repay the loans. The Debtor therefore has established the first *Brunner* factor and has shown a genuine issue of material fact for trial.

### Additional Circumstances – *Brunner* Factor Two

As addressed previously, the second *Brunner* factor is the heart of the *Brunner* test. *Frushour*, 433 F.3d at 401. As the *Frushour* Court explained it, "[t]he second factor is, therefore, a demanding requirement and necessitates that a certainty of hopelessness exists that the debtor will not be able to repay the student loans. Only a debtor with rare circumstances will satisfy this factor." *Id.* (internal citations and quotations omitted). Such rare circumstances might include "illness, disability, a lack of useable job skills, or the existence of a large number of dependents." *Id.* (quoting *Oyler v. Educ. Credit Mgmt. Corp.*, 397 F.3d 382, 386 (6th Cir. 2005)) (internal quotations omitted). In *Frushour*, the Fourth Circuit concluded that the debtor failed to establish *Brunner*'s second factor after considering: 1) the debtor's mental and physical health, 2) education, 3) professional licenses, 4) breadth of employment history, 5) previous employment income versus current income, and 6) the lack of effort to find and the inability to provide a reason for not finding higher paying employment. *Frushour*, 433 F.3d at 401-2; *see also Spence*, 541 F.3d at 544 (finding that a low-paying job does not in itself create undue hardship, especially when the debtor likes the job and has not actively sought higher-paying employment after previously earning higher wages).

Although the second *Brunner* factor is a demanding requirement, the Court finds that, for purposes of summary judgment, sufficient evidence of rare circumstances exists in the record for reasonable minds to find that the Debtor's inability to maintain a minimal standard of living is likely

to persist for a significant portion of the duration of the student loans.[8] The Fourth Circuit has said it takes a Debtor with rare circumstances to satisfy this element of the *Brunner* Test. *See Frushour,* 433 F.3d at 401. In an attempt to articulate what rare circumstances might satisfy this standard, the Fourth Circuit included such circumstances as "illness, disability, a lack of useable job skills, or the existence of a large number of dependents." *Id*. Additionally, the Fourth Circuit considered other factors, such as breadth of employment history and previous versus current income, as relevant to determining whether there was a "hopelessness" to the persistence of the debtor's circumstances. *Id*. at 401-2. As discussed below, Ms. Erbschloe has identified the presence of most of these additional factors articulated by the Fourth Circuit. Considering the evidence in the light most favorable for the Debtor, reasonable minds could find that additional circumstances exist to justify the dischargeability of her student loan debt.

The record provides evidence that the Debtor suffers from both physical and mental ailments. Government's Exhibit H, *Erbschloe*, No. 12-07013 (Mar. 7, 2012) ECF No. 19. The Debtor's shoulder condition has and will continue to prevent her from engaging in her chosen profession, as well as any others that require physical labor. *See id and* Government's Exhibit B, *Erbschloe,* No. 12-07013 (Mar. 7, 2012) ECF No. 19. This condition appears as though it will not improve, but rather worsen with time. Government's Exhibit B at 8-9, *Erbschloe*, No. 12-07013 (Mar. 7, 2012) ECF No. 19. Meanwhile, the Debtor's chronic posttraumatic stress disorder has, in part, prevented her from seeking meaningful employment outside this region of the country. *See* Government's Exhibit B at 7, *Erbschloe*, No. 12-07013 (Mar. 7, 2012) ECF No. 19; Government's Exhibit H, *Erbschloe*, No. 12-07013 (Mar. 7, 2012) ECF No. 19. Although the Debtor may receive treatment for

---

[8] Based on the loan information provided by the Government in Exhibit K, the Court finds that the Debtor's loan currently must be repaid within 10 years under the Standard Repayment Plan for unconsolidated loans. Government's Exhibit K at 1, *Erbschloe*, No. 12-07013 (non-consolidated loans maximum repayment period reported as 10 years).

her mental illness, the memories and impact of her attack are likely to stay with her for the rest of her life. *See* Government's Exhibit B at 7-9, *Erbschloe*, No. 12-07013 (Mar. 7, 2012) ECF No. 19; Government's Exhibit H, *Erbschloe*, No. 12-07013 (Mar. 7, 2012) ECF No. 19.

Additionally, the Debtor, without further education, has limited useable job skills beyond those necessary for employment at her current income level.[9] The Debtor has an associate degree in general studies, as well as a bachelor degree in fine arts with a focus on installation art. The Debtor's employment history, however, almost entirely consists of positions in the food services industry, which traditionally pays below minimum wage with the prospect of tips. Based on the Debtor's education and job experiences, it is possible that the Debtor will not be able to find employment opportunities beyond those already available to her. Reasonable minds could conclude that the Debtor's employment history in the food services industry results from a lack of usable job skills in other fields. As such, the evidence, taken in the light most favorable to the debtor, provides sufficient facts to find that the Debtor's inability to maintain a minimal standard of living is likely to persist for a significant portion of the repayment period of her student loans.[10] Therefore, the Court finds that the evidence currently on the record is sufficient to establish the existence of the second *Brunner* factor. The specific sufficiency of the debtor's showing, however, is a genuine issue of material fact to be determined at trial.

---

[9] The Government suggested to the Court that the Debtor's talents in installation art could allow the Debtor to teach the subject at the college level. Transcript of Oral Argument at 7-8, *Erbschloe*, No. 12-07013 (Nov. 13, 2012) ECF No. 26. Such a career path, however, would generally require the Debtor to earn an advanced degree and, given the Debtor's current financial condition, incur additional debt. While this very well may be a possibility the Debtor may pursue in the future, the Court does not think the *Brunner* analysis requires a debtor to incur additional debt in order to potentially earn the higher income necessary to repay its initial debts.

[10] The Court notes that it appears as though the Debtor's $200 per month car payment, if not discharged in the underlying bankruptcy, will be satisfied within approximately five months of her discharge. This provides the Debtor with some relief in the immediate future; however, she will still be at least $123 in the red each month without taking into account her monthly student loan payments.

<u>Good Faith Efforts to Repay – *Brunner* Factor Three</u>

The third *Brunner* factor requires the debtor to show a good faith effort to repay her student loans. In determining whether the debtor has made a good faith effort to repay, courts consider if the debtor has attempted to maximize income, minimize expenses, and obtain employment. *Frushour*, 433 F.3d at 402; *see also Spence*, 541 F.3d at 544-45; and *Mosko*, 515 F.3d at 325. Furthermore, the hardship facing the debtor must be a result of factors out of the debtor's control. *Id.* Finally, the debtor should make an effort to seek loan consolidation or alternative repayment plans. *Id.* This final factor, although an important component of the inquiry, is not dispositive. *Frushour*, 433 F.3d at 402. These three factors form the basis of the Fourth Circuit's analysis of whether *Brunner*'s good faith effort requirement has been met.[11]

Sufficient evidence exists in the present record for a reasonable finder of fact to determine that the Debtor has made a good faith effort to repay her student loans. The Debtor has been in a repayment period since July 2010, is not currently in default of her obligations, and has not accumulated any late charges. Additionally, the Debtor has made at least three payments on her loan prior to filing her bankruptcy petition. The Debtor, however, has provided no evidence that she has sought consolidation or attempted to reduce her monthly payments through one of the various repayment options offered by the Department of Education. Although the courts have stressed the

---

[11] The Fourth Circuit has at times considered other, additional factors besides the three mentioned above in its good faith analysis. First, in *Frushour*, the court considered whether the debtor was doing her utmost to repay her loans despite the circumstances that led to her filing bankruptcy. 433 F.3d at 402. Second, in *Mosko*, the court considered whether the debtors had attempted to make payments on their student loans prior to experiencing financial hardship. 515 F.3d at 326. Additionally, the *Mosko* court rebutted the debtors' argument that their attempts to defer or acquire forbearances on their loans exhibited good faith. The court stated that more was needed, such as an attempt to make payments or set up a repayment plan after the loans came out of deferment or forbearance. *Id.* at 326-27; *see also Spence*, 541 F.3d at 545. Third, in *Spence*, the court stated that good faith efforts to repay loans held by one loan servicer does not demonstrate good faith efforts to repay loans held by another servicer. 541 F.3d at 545.

importance of this factor, it is not dispositive, *Frushour*, 433 F.3d at 402, and the Court is required to give all justifiable inferences to the nonmoving party on a motion for summary judgment. *News and Observer Publishing*, 597 F.3d at 576. As discussed previously, the Debtor has made efforts to reduce her expenses and is currently working two part-time jobs in an effort to maximize her income. The Debtor's physical and mental hardships, which impact the Debtor's earning capacity and ability to work in her trained field, result from a traumatic experience entirely out of the Debtor's control. The Government has correctly acknowledged that the attack and injury occurred prior to the loans; yet, evidence indicates that it was not until after the debtor graduated that she learned the impact of the injury would persevere. *See* Government's Exhibit B at 8-9, *Erbschloe*, No. 12-07013 (Mar. 7, 2012) ECF No. 19; Transcript of Oral Argument at 28, lines 1-21, Erbschloe, No. 12-07013 (Nov. 13, 2012) ECF No. 26. Therefore, in considering the totality of the evidence regarding the Debtor's good faith efforts to repay, the Court determines the evidence is sufficient for a reasonable finder of fact to determine that the Debtor made a good faith effort to repay her student loans by: making some effort to reduce expenses, while increasing income; avoiding default during the repayment period and without incurring late charges; making some voluntary payments on her loans; and facing hardship that is a result of factors outside of her control. As such, the evidence is sufficient to establish the third *Brunner* factor; whether the Debtor, in fact, has made a good faith effort to repay her loans is a genuine issue of material fact that needs to be determined at trial.

## Conclusion

The record contains sufficient evidence that the Debtor established all three elements of the *Brunner* Test. Yet reasonable minds could disagree as to the whether the evidence is sufficient to conclude that an undue hardship exists. A genuine issue of material fact exists as to each element of the *Brunner* Test compelling this case to trial. The Government is not entitled to judgment as a matter of law and, as such, its Motion is denied. The Court will issue a corresponding order in accordance with the above decision.

Copies of this memorandum opinion are direct to be sent to the Debtor, Amber Erbschloe, 141 Rogers Road, Ripplemead, VA 24150-3026; Debtor's counsel, Steven Dennison Smith, S.D. Smith Esquire, PLLC, 125 N. Main Street, #500-353, Blacksburg, VA 24060; the Defendant, United States Department of Education, c/o Chad Keller, Litigation Support, 50 Beale Street, Suite 8629, San Francisco, CA 94105; Defendant's counsel, Sara Bugbee Winn, U.S. Attorney's Office, PO Box 1709, Roanoke, VA 24008-1709; and the Chapter 7 Trustee, George I Vogel, PO Box 18188, Roanoke, VA 24014.

*/s/ Rebecca B. Connelly*
_____

Rebecca B. Connelly

U.S. Bankruptcy Judge